IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

VIRENDAR K. VERMA, M.D., and
REHAB AND PAIN MANAGEMENT CLINIC, P.A.            PLAINTIFFS

v.                          5:06CV00043-WRW

JEFFERSON HOSPITAL ASSOCIATION
d/b/a JEFFERSON REGIONAL MEDICAL
CENTER and REHABCARE GROUP, INC.                  DEFENDANTS

ORDER

Plaintiff, individually and through his company Rehab and Pain Management Clinic, P.A. ("RPMC"), filed suit against Defendants following the termination of an employment contract with RehabCare Group ("RehabCare"). Plaintiff alleges he suffered discrimination, retaliation, and was ultimately terminated due to his race in violation of 42 U.S.C. § 1981. Plaintiff also argues violations of the Sherman Anti Trust Act, the Arkansas Civil Rights Act ("ACRA"),[1] breach of contract, and interference with a business expectancy. Pending are Defendants' Motions to Dismiss (Doc. Nos. 31, 45, 79, and 87). For the following reasons, Defendants' Motions are DENIED.

I.     Background

In the summer of 1992, Dr. Verma became the Associate Medical Director of RehabCare.[2] Dr. Verma's legal relationship with RehabCare changed in January 1996, when Dr. Verma, as

---

[1] Ark. Code Ann. § 16-123-101 (Supp. 2001).

[2] Doc. No. 48-2, Ex. 1.

1

president and sole share hold of RPMC, contracted his services through RPMC with Rehabcare. RehabCare is owned by Jefferson Hospital.[3]

Dr. Verma continued as the Associate Medical Director until August of 1999, when he was replaced by Dr. Sue Frigon, a white female.[4]  Plaintiff contends that Dr. Frigon was ineligible to apply for the position because she was not board certified.  Plaintiff maintains that his relationship with Dr. Frigon was strained and resulted in the following: (1) Rehabcare encouraged hospital patients to request Dr. Frigon instead of Dr. Verma; (2) Rehabcare encouraged staff to refer patients to Dr. Frigon instead of Dr. Verma; (3) Dr. Verma's complaints about these matters and general patient care were ignored, though he did receive one letter from the Chief of Staff acknowledging his complaints; and (4) Dr. Frigon interfered with Dr. Verma's patients and medical orders.[5]

Dr. Verma's contract  was terminated on January 16, 2006 by RehabCare Group effective February 18, 2006. Because RehabCare has an exclusive contract with Jefferson Hospital, Plaintiff sought a preliminary injunction so that he could continue to treat his existing patients at Jefferson Hospital.

Following the March 2, 2006 hearing on the preliminary injunction, Defendants were ordered to maintain a *status quo* until trial.

 A March 6, 2006 Order, reads:

> The Defendants, Jefferson Hospital Association d/b/a Jefferson Regional Medical Center ("JRMC", hereafter) and RehabCare Group, Inc. (RehabCare", hereafter) agree that Dr. Verma is and will be authorized to

---

[3]Doc. No. 48-2.

[4]*Id*.

[5]*Id*.

>   engage in the full practice of rehabilitation medicine at JRMC and RehabCare, including, but not limited to, the following:
>
>   a. Admit, consult, follow, treat, and issue orders for rehabilitation patients to the Rehabilitation Unit at JRMC;
>
>   b. Conduct pre-admission screening of rehabilitation patients to the Rehabilitation Unit at JRMC;
>
>   c. Dr. Verma will continue weekly staff meetings on Thursdays;
>
>   2. This agreement will continue without interference, discrimination, retaliation or harassment.[6]

## II. Standard of Review

Dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle him to relief."[7]  A court must accept the allegations of the complaint as true and construe the complaint in favor of the plaintiff.[8]  The complaint will be dismissed only if it appears that the plaintiff has failed to prove any facts in support of his claim which would entitle him to relief.[9]  A complaint should not be dismissed, nor a cause of action ignored, merely because the complaint does not state with precision all elements that give rise to a legal basis for recovery.[10]

---

[6] Doc. No. 22.

[7] *Springdale Education v. Springdale School*, 133 F.3d 649 (8th Cir. 1998); *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 821 (8th Cir. 1983).

[8] *In re Staffmark, Inc. Securities Litigation*, 123 F. Supp. 2d 1160, 1162 (E.D. Ark. 2000).

[9] *Jenkins v. McKeithen*, 395 U.S. 411 (1969).

[10] *Smith v. Ouachita Technical College*, 337 F.3d 1079, 1080 (8th Cir. 2003).

**III.   Analysis**

   **A.   Contract Claims**

      **1.   Dr. Verma**

Defendants first argue that Dr. Verma does not have an individual claim for breach of contract because the contract at issue was between RehabCare and RPMC. In response, Dr. Verma argues that he has standing to raise a breach of contract claim because he is a third-party beneficiary to the contract. Dr. Verma's allegations that he is a third-party beneficiary are enough to survive a motion to dismiss on the contract claims including interference with a business expectancy.

      **2.   RPMC**

Defendants argue that RPMC has no claim for breach of contract because (1) the contract gives the parties the right to terminate the agreement at any time, and (2) there is no cause of action for breach of good faith and fair dealing. RPMC responds that Arkansas recognizes an implied covenant of good faith and fair dealing.[11] RPMC has pled sufficient facts in support of its breach of contract claim that would entitle it to relief. Reading the Complaint in the light most favorable to Plaintiffs, the breach of contract claim and interference with business expectancy claims survive a motion to dismiss.

   **B.   Civil Rights Claims**

      **1.   Dr. Verma**

Defendants argue that Dr. Verma has no standing to raise a § 1981 or ACRA claim because he had no rights under the contract. It has already been determined that Dr. Verma has pled

---

[11]*See TCBY Sys. Inc. v. RSP Co., Inc.*, 33 F.3d 925, 928 (8th Cir. 1994).

sufficient facts to raise a third-party beneficiary claim under the contract; therefore, Dr. Verma's civil rights claims must also remain.

### 2.  RPMC

Defendants argue that RPMC has no standing to raise § 1981 or ACRA allegations because, as a for-profit corporation, it has no racial identity. RPMC argues that Defendants are intentionally depriving Dr. Verma the enjoyment of the benefits, privileges, terms, and conditions of the contractual relationship it had due to Dr. Verma's race. RPMC has put Defendants on notice that civil rights issues exist and that more and more courts are recognizing that a corporation may have standing to raise such a claim.[12] For these reasons, RPMC's civil rights allegations remain.

### 3.  Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show that he engaged in statutorily protected activity, that the defendant took adverse action against him, and that there is a connection between the two.[13] Plaintiffs allege that when Dr. Verma complained to JRMC that he believed other doctors were receiving kickbacks from RehabCare, Dr. Verma was fired and RPMC's contract was terminated. This allegation is sufficient to withstand a motion to dismiss.

---

[12]*See NDN Drywall, Inc. v. Custom Drywall, Inc.*, No. 4CV4706, 2005 WL 1324056 (D. Minn. May 4, 2005) ("Federal courts have held that corporations have prudential standing to pursue race discrimination claims under § 1981) (*citing Oti Kaga, Inc. v. South Dakota Housing Dev. Authority*, 342 F.3d 871, 881 (8th Cir. 2003)). *See also Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1059 (9th Cir. 2004) (African-American-owned business had prudential standing to bring § 1981 action because it had acquired imputed racial identity to place it within § 1981's zone of interest).

[13]*Montandon v. Farmland Industries, Inc.*, 116 F.3d 355 (8th Cir. 1997).

### C.     Anti-Trust Claims

Finally, Defendants argue that Plaintiffs' allegations related to antitrust violations are insufficient to support a claim for relief.  Specifically, Defendants argue that (1) Plaintiffs have not shown a private injury that coincides with a public harm; (2) Plaintiffs have failed to define the relevant market place; and (3) Plaintiffs have failed to show that Defendants' actions have had an adverse effect on competition.[14]  Plaintiffs carry the burden of production;[15] however, dismissal of antitrust actions before the parties have had an opportunity for discovery, should be "granted sparingly and with caution."[16]

In the Amended Complaint, Plaintiffs allege that "JRMC conducts business affecting interstate commerce, including patients from surrounding states, billings to out of state insurance providers and through billings to Medicare and Medicaid . . . . JRMC and RehabCare exercise market control of the south Arkansas and Western Mississippi regions."[17]  For purposes of a motion to dismiss and without the benefit of discovery, Plaintiffs have pled sufficient facts to raise an inference that antitrust violations may have occurred.

---

[14]*See Huelsman v. Civic Center Corp.*, 873 F.2d 1171 (8th Cir. 1989).

[15]*Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998).

[16]*Id.* (*citing Huelsman v. Civic Ctr. Corp.*, 873 F.2d 1171, 1174 (8th Cir. 1989)).

[17]Doc. No. 48-2.

**IV.     Conclusion**

The liberal notice pleading required in federal court has been met. Defendants' Motions to Dismiss are DENIED.

IT IS SO ORDERED this 6th day of November, 2006.


                                                              /s/Wm. R. Wilson, Jr.
                                                        UNITED STATES DISTRICT JUDGE